UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Candace A. Steller,

       Plaintiff,

       v.                              Civil Action No. 2:10-CV-160

Commissioner of Social Security,

       Defendant.

### OPINION AND ORDER
(Docs. 6, 7)

Plaintiff Candace Steller brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and reversal of the decision of the Commissioner of Social Security ("Commissioner") denying her disability insurance benefits application.  Pending before the Court are Steller's motion seeking an order reversing the Commissioner's decision (Doc. 6), and the Commissioner's motion seeking an order affirming the same (Doc. 7).

For the reasons set forth below, the Court DENIES Steller's Motion to Reverse (Doc. 6), and GRANTS the Commissioner's Motion to Affirm (Doc. 7).  Pursuant to Local Rule 7(a)(6), the Court concludes that oral argument is not required.

### Background/Procedural History

Steller was born on November 17, 1951, and thus was fifty-five years old on the alleged disability onset date of September 30, 2007.  (Administrative Record ("AR") 32, 92, 102.)  She completed her Bachelor of Arts at Indiana University, attended at least one

year at Howard Law School, and has a teaching certificate. (AR 25, 32, 34, 110, 287-88.) Steller has work experience as a bus driver, an aerobics instructor, a waitress, a human resources worker, a realtor, a car salesperson, a substitute teacher, a pizza delivery driver, and a stocker at a retail store. (AR 107, 127-34.)

In July 2008, Steller applied for disability insurance benefits, alleging that she became disabled on September 30, 2007 due to supraventricular tachycardia ("SVT")[1], depression, and menopausal symptoms. (AR 92, 106.) She explained that these conditions limit her ability to work because they cause fatigue and a heart flutter upon stress or exertion. (AR 106.) In August 2008, Steller explained that there are different levels of her heart arrhythmia, and when the condition is most acute, she cannot do anything as she is in pain and feels faint and short of breath. (AR 138.) Steller believes her heart condition is exacerbated by menopause. (*Id.*) She states that she has no social life and engages in very little physical activity, largely due to her lack of energy and fear of having a heart episode. (AR 140.) Despite her claim that she became unable to work on September 30, 2007, Steller continued working until May 26, 2008. (AR 106.)

Steller's disability insurance benefits application was denied initially and upon reconsideration, and she timely requested an administrative hearing, which occurred on January 11, 2010. (AR 18-32, 34.) She appeared and testified at the hearing, and was represented by counsel. (AR 18-31.) On February 11, 2010, Administrative Law Judge ("ALJ") Ruth Kleinfeld issued a decision finding that Steller was not disabled under the Social Security Act. (AR 7-13.) On May 13, 2010, the Decision Review Board affirmed

---

[1] "Supraventricular tachycardia," otherwise known as "SVT," is defined as "rapid heart rate due to a pacemaker anywhere above the ventricular level." STEDMAN'S MEDICAL DICTIONARY 1931 (28th ed. 2006).

the ALJ's decision, rendering it the final decision of the Commissioner.  (AR 1-3.)
Having exhausted her administrative remedies, Steller filed her Complaint in the instant
action on July 2, 2010.  (*See* Doc. 1.)

## ALJ Determination

The Commissioner uses a five-step sequential process to evaluate disability
claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004).  The first step
requires the ALJ to determine whether the claimant is presently engaging in "substantial
gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so
engaged, step two requires the ALJ to determine whether the claimant has a "severe
impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant
has a severe impairment, the third step requires the ALJ to make a determination as to
whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R.
Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).
The claimant is presumptively disabled if the impairment meets or equals a listed
impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to
consider whether the claimant's "residual functional capacity" ("RFC") precludes the
performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The
fifth and final step requires the ALJ to determine whether the claimant can do "any other
work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving
his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a
"limited burden shift to the Commissioner" to "show that there is work in the national

economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's residual functional capacity").

Employing this five-step analysis, ALJ Kleinfeld first determined that Steller has not engaged in substantial gainful activity since her alleged onset date of September 30, 2007. (AR 9.) At step two, the ALJ found that Steller has the severe impairment of supraventricular tachycardia, although "the evidence is minimal that [Steller] has exertional limitations resulting from [this] impairment." (AR 10.) With respect to Steller's depression, the ALJ determined that it is nonsevere, given that it "does not cause more than minimal limitation in [Steller's] ability to perform basic mental work activities." (*Id.*) At step three, the ALJ found that Steller does not have an impairment or combination of impairments that meets or medically equals a listed impairment. (AR 11.)

Next, the ALJ determined that Steller has the RFC to perform the full range of medium work, as defined in 20 C.F.R. § 404.1567(c). (AR 12.) The ALJ explained that, although Steller's medically determinable impairments could reasonably be expected to cause the alleged symptoms; her statements concerning the intensity, persistence, and limiting effects of those symptoms "are not credible to the extent they are inconsistent with the above [RFC] assessment." (*Id.*) In support of this credibility determination, the ALJ noted that Steller had not reported to any of her treating or examining physicians those limitations which she reported to the ALJ at the administrative hearing, including

her alleged difficulties with tasks such as walking in her driveway. (*Id.*) The ALJ specifically cited to medical reports from treating physicians Dr. Adam Kunin, a heart specialist, and Dr. Kimberly Bruno, a primary care provider, which indicated that Steller was able to walk, and even run, during the relevant time period. (*Id.*) The ALJ afforded minimal weight to the opinion of treating physician Dr. Katherine Marvin because, although the Doctor provided a list of Steller's exertional limitations, the list was based solely on Steller's self-reporting and there were no clinical observations to support it. (AR 12-13.) The ALJ further observed that Steller had sought minimal treatment for her complaints since 2008, had never sought treatment for her mental health issues, and "remained quite active with tasks including working as a substitute teacher." (AR 13.)

Given these findings and RFC assessment, the ALJ determined that Steller is capable of performing her past relevant work as a realtor, which job includes only "light" exertional requirements. (AR 13.) The ALJ concluded that Steller has not been under a disability, as defined in the Social Security Act, from September 30, 2007 through the date of the decision. (*Id.*)

## **Standard of Review**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore*, 566 F.3d at 305.

Although the reviewing court's role with respect to the Commissioner's disability decision is "quite limited[,] and substantial deference is to be afforded the Commissioner's decision," *Hernandez v. Barnhart*, No. 05 Civ. 9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quotation marks and citation omitted), the Social Security Act "must be construed liberally because it is a remedial statute that is intended to include, rather than exclude, potential recipients of benefits," *Jones v. Apfel*, 66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999); *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981) ("In its deliberations the District Court should consider the fact that the Social

Security Act is a remedial statute to be broadly construed and liberally applied.").

## Analysis

Steller advances four arguments in her motion: (1) the ALJ failed to give proper weight to the opinion of treating physician Dr. Katherine Marvin, or in the alternative failed to develop the record with respect to Dr. Marvin's opinion; (2) the ALJ failed to properly address Steller's credibility; (3) the ALJ failed to discuss Steller's ability to attend a full day of work; and (4) the ALJ failed to discuss Steller's ability to get along with co-workers and supervisors. In response, the Commissioner argues that the ALJ's decision is supported by substantial evidence and complies with the applicable legal standards. For the reasons explained below, the Court finds in favor of the Commissioner.

## I.    Dr. Marvin's Opinion

### A.    The ALJ Gave Proper Weight to Dr. Marvin's Opinion.

Steller argues that the ALJ failed to give proper weight to the opinion of Dr. Marvin. That opinion is contained in a Medical Source Statement of Ability to Do Work-Related Activities (Mental) dated December 8, 2009 ("Mental MSS") and a Medical Source Statement of Ability to Do Work-Related Activities (Physical) dated December 8, 2006 ("Physical MSS").[2]  (AR 350-60.)  In the Mental MSS, Dr. Marvin opines that Steller is moderately restricted in her ability to interact appropriately with the public,

---

[2]  Both Medical Source Statements appear to have been prepared on the same date, although the dates of signature are three years apart.  (*See* AR 352, 359.)  Steller fails to address this apparent typographical error, and thus it is unclear to the Court whether the 2006 or 2009 date is correct.  Given that the alleged onset date is not until September of 2007, and in an effort to construe the evidence liberally in favor of a potential recipient of social security benefits, the Court considers both Statements to be dated December 8, 2009, which falls within the alleged disability period.

markedly restricted in her ability to respond appropriately to usual work situations and changes in work routine, and extremely restricted in her ability to interact appropriately with supervisors and co-workers. (AR 351.) She further opines that Steller's mental impairments would cause her to miss more than four days of work per month. (AR 352.) In the Physical MSS, Dr. Marvin opines that Steller is never able to lift or carry more than ten pounds, is able to sit for only four hours at a time and stand or walk for only two hours at a time, and is able to stand or walk for only four hours in an eight-hour work day. (AR 355-56.) The Doctor further opines that Steller is never able to reach with either hand, to climb, balance, kneel, or crawl. (AR 356-57.) With respect to Steller's visual impairments, Dr. Marvin states that Steller is unable to read either "very small print" or "ordinary newspaper or book print." (AR 357.) Dr. Marvin concludes that Steller's physical impairments would cause her to miss more than four days of work per month. (AR 359.)

Preliminarily, the Court finds that Steller has failed to meet her burden of demonstrating that the treating physician rule applies because she has not shown (or even argued) that Dr. Marvin is a "treating source." The regulations define a treating source as follows:

> Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, *an ongoing treatment relationship* with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s).

20 C.F.R. § 404.1502 (emphasis added).  In *Schisler v. Bowen*, 851 F.2d 43, 46 (2d Cir. 1988), the Second Circuit defined a "treating physician" as follows: "[a] claimant's . . . own physician . . . or psychologist . . . who has provided the [claimant] with medical treatment or evaluation and who has or had *an ongoing treatment and physician-patient relationship* with the individual."  (Emphasis added.)  In subsequent decisions, the Circuit specified that physicians who see a patient only once do not have a chance to develop an ongoing relationship with the patient and thus are generally not considered treating physicians.  *See Garcia v. Barnhart*, No. 01 Civ. 8300, 2003 WL 68040, at *5 n.4 (S.D.N.Y. Jan. 7, 2003) (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *Jones v. Apfel*, 66 F. Supp. 2d 518, 525 (S.D.N.Y. 1999)); *see also Petrie v. Astrue*, No. 10-2070-cv, slip op. at *6-7 (2d Cir. Mar. 8, 2011).  In this case, Steller has failed to inform the Court, and the record does not indicate, when (if ever) Dr. Marvin provided Steller with medical treatment or evaluation; what type of treatment or evaluation Dr. Marvin provided; and whether there was an ongoing treatment relationship between Dr. Marvin and Steller, including approximately how many times Dr. Marvin saw Steller.  Therefore, the Court finds that Dr. Marvin was not a treating physician, and thus the treating physician rule does not apply.

Even assuming Dr. Marvin was Steller's treating physician and the treating physician rule applies, the ALJ gave proper weight to Dr. Marvin's opinion.  The "treating physician rule" provides that the ALJ must give a treating physician's opinion as to the claimant's disability "controlling weight," so long as that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in [the] case record . . . ."  20 C.F.R. §

404.1527(d)(2); *see Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

Conversely, the ALJ need not give a treating physician's opinion controlling weight

where it is contrary to other substantial evidence in the record, including the opinions of

other medical experts.  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  Applied

here, the ALJ was not required to afford controlling weight to Dr. Marvin's opinion

because: (1) the opinion is not supported by medically acceptable clinical and laboratory

diagnostic techniques; and (2) the opinion is not consistent with other substantial

evidence in the record.

With respect to the first issue, Dr. Marvin's opinion contains no reference to

clinical or diagnostic techniques, and thus the ALJ's statement that the Doctor "provided

no clinical observations to support the[] limitations" documented in her opinion (AR 13)

is accurate.  In fact, Dr. Marvin herself states in her Physical MSS that the "medical or

clinical findings" which support her assessment that Steller is unable to "reach" are

"[u]nknown."  (AR 356.)  The Doctor explained: "[Steller] has not been to MD . . . but

*claims* not to be able to do [the] above activities," including reaching, handling,

fingering, feeling, and pushing/pulling.  (*Id.* (emphasis added).)  Given this statement, it

appears that Dr. Marvin's opinion, at least on the issue of Steller's ability to use her

hands, was based purely on Steller's self-reporting, as noted by the ALJ. (S*ee* AR 13.)

The only other possible reference to clinical or diagnostic techniques contained in Dr.

Marvin's written opinion is her identification of "[m]ood liability" and "menopausal

symptoms" (AR 351) as factors that support her findings regarding Steller's ability to

10

interact with the public, supervisors, and co-workers.  But "mood liability" and

"menopausal symptoms" are far from "medically acceptable clinical and laboratory

diagnostic techniques."  20 C.F.R. § 404.1527(d)(2).  Moreover, there is no reference to

the record to support these findings, either in Dr. Marvin's opinion or in Steller's brief.

More importantly, Dr. Marvin's opinions are not consistent with other substantial

evidence in the record.  Rather, there is substantial evidence in the record – including

reports from treating and consultative physicians and Steller's own self-reporting

regarding her daily activities – which conflicts with Dr. Marvin's opinion.  Specifically,

with respect to Dr. Marvin's opinion that Steller is moderately restricted in her ability to

interact appropriately with the public, markedly restricted in her ability to respond

appropriately to usual work situations and changes in work routine, and extremely

restricted in her ability to interact appropriately with supervisors and co-workers (*see* AR

351); notes from consultative psychologist Dr. Jason Fechter indicate that, as of

November 2008, Steller reported that she was substitute teaching, which she "really

lik[ed]" and which had been "going well" for her (AR 287).[3]  Dr. Fechter further stated

that Steller had "trouble" working at Walmart, but that was due to "heart rate issues," not

problems interacting with the public or her supervisors and co-workers.  (*Id.*)  Dr. Fechter

noted that Steller was dressed appropriately, and seemed "cooperative," "intelligent[,]

and well spoken."  (AR 288.)  He recorded in his notes that Steller had never been in

---

[3] At the January 2010 administrative hearing, Steller testified that she could not substitute teach (or do "realtor type work") due to a lack of energy, general body aches and pains, gastritis, diarrhea, and side effects from her heart medications.  (AR 25-26.)  Noteworthy, however, she did *not* state that her ability to teach was negatively affected by any social difficulties, including limitations in interacting with supervisors or co-workers.

mental health counseling or psychotherapy (*id.*), which absence of treatment is reflected in the record before the Court (*see, e.g.,* AR 349). Steller reported no social problems to Dr. Fechter, other than feeling "chronically stressed" and "chronically depressed over most of her life." (AR 287.)

The lack of mental health treatment records, as well as Steller's failure to relay any severe mental health issues to her various medical providers, discredits Dr. Marvin's opinion that Steller's mental impairments would cause her to miss more than four days of work per month due to mental health problems. (AR 352.) The opinion of state agency psychologist Dr. William Farrell is also contrary to that of Dr. Marvin and in accord with Dr. Fechter's opinion. Specifically, Dr. Farrell opined that Steller did not suffer from any severe mental impairment. (AR 291-304.) Although he found that Steller suffered from a depressive disorder, he opined that it imposed no more than mild limitations on her daily activities, social functioning, and ability to maintain concentration, persistence, or pace. (AR 301.) State agency psychologist Dr. Joseph Patalano affirmed Dr. Farrell's conclusion that Steller's mental impairment was non-severe. (AR 349.)

Dr. Marvin's opinion that Steller could not read "ordinary newspaper or book print" (AR 357) is also contradicted by the record, which clearly demonstrates that Steller was a substitute teacher approximately three-to-four days per week (AR 272, 274, 287) and was working on completing writing a book (AR 248, 274, 287). Moreover, Dr. Marvin's opinion regarding Steller's physical impairments is belied by reports made by Steller to her other medical providers that, in July of 2008, almost one year after the alleged onset date, she had been running three days per week "without any trouble" (AR

264) and was "getting some exercise regularly" (AR 249). Dr. Marvin's opinion regarding Steller's physical impairments is also contradicted by objective medical evidence, including a "completely normal" electrocardiogram ("EKG") completed in July 2007 (AR 249, 253) and a "completely normal" stress test completed in August 2008 (AR 256). In accord with these test results, in July 2008, heart specialist Dr. Kunin described Steller's heart as "structurally normal," despite "[b]ursts of SVT." (AR 249.)

Two of Steller's treating physicians, Drs. Kunin and Bruno, specifically discussed whether Steller's heart condition was disabling, and concluded that it was not. In July 2008, the same month that Steller filed her disability application, Dr. Kunin wrote a letter to Steller informing her that SVT was "a very treatable condition," and that it was "too soon to make a final determination regarding disability based on [that condition]." (AR 247.) A month earlier, the Doctor suggested "lifestyle modification," but noted that that option was "not appealing" to Steller because she "already feels she is doing a fair bit by eating well and getting some exercise regularly." (AR 249.) Dr. Kunin prescribed Diltiazem and noted that if the medication was not effective, "certainly ablation is a very reasonable strategy" with a ninety-five percent success rate and a one percent chance of complications. (*Id.*) In August 2008, Dr. Bruno recorded in a treatment note that it was "unlikely that [Steller] would get [disability benefits]" as a result of her heart condition, and that "she needs to focus on treatment of her [symptoms]." (AR 262.) Likewise, in September 2008, Dr. Kunin stated in a treatment note that Steller was "encouraged . . . to seek therapy" before seeking "some type of disability." (AR 280.)

At least in one instance, Steller's own self-reporting regarding her daily activities

is inconsistent with Dr. Marvin's opinion. Specifically, Dr. Marvin opines that Steller is "[n]ever" able to operate a motor vehicle (AR 358), but in August 2008, Steller reported that she "drive[s] an older van." (AR 140.)

Furthermore, Dr. Marvin's written opinion is internally conflicting: in her Physical MSS, the Doctor opines that Steller can "never" reach (AR 356), while at the same time opining that Steller can shop, travel without a companion, and prepare a simple meal (AR 359). The MSS contains no explanation as to how it is possible for a person to perform the latter activities without engaging in at least minimal reaching. Additionally, on one page of the Physical MSS, Dr. Marvin opines that Steller can "never" climb stairs or ramps (AR 357), while on another page she opines that Steller can "climb a few steps at a reasonable pace with the use of a single hand rail" (AR 359). Finally, Dr. Marvin opines in the Physical MSS that Steller is unable to read ordinary newspaper or book print (AR 357), but also opines that Steller can "sort, handle, [and] use paper/files" (AR 359). It is unclear how a person would be able to sort, handle, or use paper documents without being able to read them.

For these reasons, the ALJ's decision to afford only "minimal weight" to Dr. Marvin's opinion was proper.

### B.  The ALJ Was Not Required to Further Develop the Record with Respect to Dr. Marvin's Opinion.

Citing to *Clark v. Commissioner*, 143 F.3d 115, 118 (2d Cir. 1998), Steller argues that the ALJ erred in failing to seek "additional records" with respect to Dr. Marvin's opinion. (Doc. 6 at 5-6.) The Court disagrees.

The Second Circuit has held that "'the ALJ, unlike a judge in a trial, must [him]self affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.'" *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (quoting *Echevarria v. Sec'y of Health and Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)). This duty arises from the Commissioner's regulatory obligation to develop a complete medical record before making a disability determination, and exists even when the claimant is represented by counsel. *Pratts*, 94 F.3d at 37 (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 48). The Second Circuit recently explained that, where "the record evidence [i]s adequate to permit the ALJ to make a disability determination, . . . the ALJ [is not] obligated *sua sponte* to recontact the treating physicians." *Carvey v. Astrue*, 380 Fed. Appx. 50, 53 (2d Cir. 2010); *see also Petrie v. Astrue*, No. 10-2070-cv, slip op. at *8 (2d Cir. Mar. 8, 2011). Clearly, the ALJ's duty is to "*develop* the record, not . . . *create* it." *Jones v. Bowen*, 699 F. Supp. 693, 697 n.8 (N.D. Ill. 1988) (emphasis in original) (citing SSR 82- 62).

In this case, the ALJ fulfilled her duty to develop the record. Steller does not point to, nor does the Court find, any deficiencies or obvious gaps in the record, and the ALJ appears to have been in possession of Steller's complete medical history when she issued her decision. The ALJ's decision includes citation to the relevant evidence, which

supports the ALJ's findings.  Steller has not specified in her brief what additional medical evidence the ALJ should have attempted to obtain prior to making her decision, and how that evidence would have altered such decision.  In fact, in April 2009, despite the Commissioner's attempt to schedule an additional consultative examination which could have constituted or included reference to additional medical evidence, Steller declined to attend such examination.  (AR 349.)  Moreover, Steller was represented by Attorney Anthony Lamb at the administrative hearing, and Attorney Lamb informed the ALJ at that time that there was no outstanding evidence.  (AR 21.)  While it is true that the ALJ has a duty to make a complete record, "this requirement can reasonably require only so much," *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004), and in this case, the ALJ was not required to do more than she did.  *See Hathaway v. Astrue*, No. 2:09-CV-100, slip op. at *10-15 (D. Vt. Jan. 21, 2010) (Conroy, Mag. J.).

## II.      Credibility Determination

Next, citing to Social Security Ruling ("SSR") 96-7p and *Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir. 1988), Steller argues that the ALJ failed to properly address Steller's credibility.  (*See* Doc. 6 at 6-7.)  Specifically, Steller claims that "the ALJ failed to make findings with regard to the specifics of why [s]he did not find Ms. Stellar [sic] credible."  (*Id.* at 6.)  The Court rejects Steller's claim, and finds that substantial evidence supports the ALJ's credibility determination.

It is the province of the Commissioner, not the reviewing court, to "appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).  If the Commissioner's findings are supported

by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints. *Id.* (citing *McLaughlin v. Sec'y of Health, Educ., and Welfare*, 612 F.2d 701, 704 (2d Cir. 1982)). "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (Jul. 2, 1996). An important indicator of the credibility of a claimant's statements is their consistency with other information in the record, including the claimant's medical treatment history. *Id.* at *5, 7.

Here, the ALJ concluded that Steller's statements regarding the intensity, persistence, and limiting effects of her symptoms "are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." (AR 12.) This conclusion is supported by several of the ALJ's specific findings. First, the ALJ correctly noted that Steller alleged difficulties with tasks – such as walking in her driveway – which she had not reported to any treating or examining physician. (*Id.*) Moreover, the ALJ accurately stated that specific medical evidence, including Dr. Kunin's recording that Steller maintained a "steady" gait in July and September 2008, approximately one year from the alleged onset date (AR 249, 281), and Dr. Bruno's notation that Steller was able to run three days each week in July 2008 (AR 264), conflicted with Steller's allegation at the administrative hearing that she could "barely [walk] up [her] driveway" (AR 28). Finally, the ALJ correctly reported that Steller had sought minimal treatment for her complaints since 2008, failing to return to Drs. Winget and Kunin after January 2009 and never seeking mental health treatment. (AR 13; *see also* AR 10.)

17

The ALJ further supported her credibility determination by explaining that Steller had "remained quite active," including working as a substitute teacher (AR 13), and was able to care for her personal needs, shop for groceries, do laundry, and handle her own finances (AR 11).  The record supports these findings.  For example, Dr. Fechter's November 2008 report states that, although Steller represented to him that she experienced long-term difficulties with her health and chronic depression, she was successfully substitute teaching on a part-time basis and was "working on writing books." (AR 287.)  Dr. Fechter further noted that, although Steller considered certain activities to be "physically difficult," she was nonetheless able to take her dogs for a walk, work on her computer, prepare dinner, do the laundry, grocery shop, cook, and clean.  (AR 288.) Consistent with Dr. Fechter's report, in her own self-reporting, Steller indicated that, although the tasks were physically exerting to her, she was able to do her laundry, change the sheets on her bed once every two weeks, sweep and dust once a week, shop for groceries once a month or more, pay bills, work, and either walk her dog or take the dog to a park.  (AR 140; *see also* AR 174-77, 288.)

The ALJ appears to have considered the entire case record in assessing Steller's credibility.  Moreover, the ALJ recorded specific reasons for the weight given to Steller's statements.  Finally, certain of Steller's statements are inconsistent with other information in the record, including her medical treatment history.  Therefore, the Court must uphold the ALJ's credibility determination.

III.   **Steller's Ability to Work on a Regular and Continuing Basis**

Citing to SSR 96-8p, Steller argues that the ALJ should have discussed Steller's

testimony that she was unable to complete full-time work on a regular basis, as well as Dr. Marvin's opinion that Steller would miss four or more days of work each month. (*See* Doc. 6 at 7.)  SSR 96-8p provides that an ALJ's RFC assessment must include a discussion of the claimant's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and must be based on all relevant evidence in the record.  SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996).  The ruling further requires that, in making an RFC assessment, ALJs "must first identify [a claimant's] functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis."  *Id.* at *1.

ALJ Kleinfeld properly identified Steller's functional limitations or restrictions in the context of making the assessment that Steller has the RFC to perform the full range of medium work.  Specifically, the ALJ noted Steller's testimony that she "does not feel well and has aches and pains such that feels elderly," that "[e]xertion is difficult for her," that she "has trouble walking [her dog] in the driveway," that she "has been depressed all of her life," and that she "does not socialize."  (AR 12.)  Nonetheless, the ALJ reasonably questioned Steller's credibility, and thus the veracity of such testimony, for the reasons discussed above.  As argued by Steller, the ALJ did not specifically address the fact that Dr. Marvin checked off boxes on her Physical and Mental MSS forms opining that Steller would miss "more than 4 days [of work] per month" (AR 352, 359), but the ALJ was not required to address this fact, given her sufficient explanation for affording minimal weight to Dr. Marvin's opinion, as discussed above.

Even if the ALJ were required to specifically address Steller's testimony and Dr.

Marvin's opinion that Steller could not complete full-time work on a regular basis, Steller has failed to demonstrate that the ALJ's failure to do so caused harm.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (applying harmless error standard, and holding that, "where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration.").  Moreover, the rationale for the ALJ's implied rejection of such testimony and medical opinion can easily be gleaned from the record, given the ALJ's explicit decisions to question Steller's credibility and afford minimal weight to Dr. Marvin's opinion.  *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (D. Vt. 1983).  The Second Circuit has held that, in cases where the evidence permits the Court to "glean the rationale of an ALJ's decision," the decision need not mention every item of testimony or explain why the ALJ considered particular evidence unpersuasive or insufficient to lead to a conclusion of disability.  *Id.*; *see Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (noting that, although the court would remand where it was "unable to fathom the ALJ's rationale in relation to evidence in the record," it would not remand where the court was "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that [the ALJ's] determination was supported by substantial evidence").

For these reasons, the Court finds that the ALJ satisfied her duties under SSR 96-8p and the other applicable law with respect to Steller's ability to work on a regular and continuing basis.

IV.   **Steller's Social Limitations**

Finally, Steller makes a cursory argument regarding the ALJ's failure to discuss

Steller's ability to get along with co-workers and supervisors and adjust to changes in the work place.  (*See* Doc. 6 at 7-8.)  Citing to *Pagan v. Chater*, 923 F. Supp. 547 (S.D.N.Y. 1996), Steller asserts that the ALJ "did not discuss" Dr. Marvin's opinion that Steller would have extreme difficulty interacting with supervisors and co-workers and marked limitations adjusting to changes in the work place.  (Doc. 6 at 8.)

Preliminarily, the Court notes that the ALJ did in fact discuss Steller's social functioning – on page 5 of her decision, the ALJ found that Steller exhibited "no more than mild limitation" in "social functioning," as there was "no evidence that [Steller] has difficulty interacting appropriately with family members, friends, or neighbors," and she continued to work as a substitute teacher.  (AR 11.)  The ALJ further noted that Steller "has not sought any mental health care treatment."  (*Id.*)

Furthermore, in *Pagan*, the Court noted that "[t]he ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error."  *Pagan*, 923 F. Supp. at 556 (citing *Smith v. Bowen*, 687 F. Supp. 902, 904 (S.D.N.Y. 1988)).  However, that statement was made in the context of an analysis of medical testimony under the treating physician rule.  And in the next sentence, the Court stated: "The medical conclusions *of a treating physician* constitute[] evidence that should not be rejected without explanation." *Id.* (emphasis added) (citing *Figueroa v. Chater*, 911 F. Supp. 98, 102 (W.D.N.Y. 1996)). As discussed above, there is no evidence that Dr. Marvin was a treating physician.  Even assuming she was, however, the ALJ's consideration of Dr. Marvin's opinion was proper under the treating physician rule.  Moreover, substantial evidence – including (a) Steller's failure to seek mental health treatment; (b) Steller's ability to work part-time as a

substitute teacher; (c) Dr. Fechter's description of Steller as intelligent, cooperative, and well-spoken; and (d) the opinions of state agency psychologists Drs. Farrell and Patalano that Steller experienced only mild difficulties in maintaining social functioning – supports the ALJ's implicit rejection of Dr. Marvin's opinion regarding Steller's limited social abilities.

Accordingly, there is no merit to Steller's argument that the ALJ failed to adequately discuss Steller's alleged social limitations.

## Conclusion

For the above reasons, Steller's Motion to Reverse (Doc. 6) is DENIED, and the Commissioner's Motion to Affirm (Doc. 7) is GRANTED.  Accordingly, the decision of the Commissioner is hereby AFFIRMED.

Dated at Burlington, in the District of Vermont, this 15th day of March, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge